1

2

3 UNITED STATES DISTRICT COURT

4 NORTHERN DISTRICT OF CALIFORNIA

5

6

7

8 AMERICAN PILEDRIVING EQUIPMENT, INC.,

9           Plaintiff,                  No. C 08-1934 PJH

10

11     v.                       **ORDER GRANTING SUMMARY JUDGMENT IN PART AND DENYING SUMMARY JUDGMENT IN PART**

12 BAY MACHINERY CORPORATION,

13           Defendant.
_____/

14      The parties' cross-motions for summary judgment came on for hearing on December

15 9, 2009 before this court. Plaintiff American Piledriving Equipment, Inc. ("plaintiff" or

16 "APE"), appeared through its counsel, Craig J. Madson, and Andrew S. Azarmi. Defendant

17 Bay Machinery Corporation ("defendant" or "Bay") appeared through its counsel, Peter C.

18 Knops. Having read all the papers submitted and carefully considered the relevant legal

19 authority, the court hereby GRANTS the motions for summary judgment in part and

20 DENIES the motions for summary judgment in part, for the reasons stated at the hearing,

21 and as follows.

22                         **BACKGROUND**

23      Plaintiff APE is the owner of United States Patent Number 5,355,964 ("'964 Patent").

24 The '964 patent is directed at the use of vibratory pile driver/extractors. Generally, pile

25 driving equipment is used in the construction industry, in order to drive large piles into the

26 earth to form a stable support for buildings or other structures. It is also used to remove

27 large piles from the earth.

28      On April 10, 2008, APE filed the instant action against defendant Bay for

infringement of the '964 patent; specifically, for Bay's alleged use, sale, lease and/or distribution of Hydraulic Power Systems, Inc.'s ("HPSI") Model 500, Model 250, and Early Model 500 vibratory pile driver/extractors ("Accused Devices"), all of which allegedly infringe the '964 patent.  See generally First Amended Complaint.

A.    The Claims at Issue

The '964 patent was issued on October 18, 1994, to John White ("White"), president of APE.  The invention claimed therein relates specifically to pile driving and pile pulling (or extracting) equipment, and more particularly to vibratory pile driving and pile extracting equipment using counterweights.

The '964 patent contains twenty-seven claims.  APE maintains that Bay has directly infringed claims 1-3, 5-14 and 16-18 of the '964 patent.  See Pl. MSJ Mot. at 4:11-13.  Of these allegedly infringed claims, four are independent claims that are at the heart of the parties arguments.  The relevant language of these claims is as follows:[1]

> **Claim 1**: "A vibratory assembly for imparting a vibratory force to a pile, comprising: a housing having at least one counterweight receiving means; a counterweight ... having a cylindrical gear portion and an eccentric weight portion integral with said cylindrical gear portion, said eccentric weight portion having at least one insert-receiving area formed therein, said counterweight being made of a first metal; a solid insert member securely positioned in one of said at least one insert-receiving areas said solid insert member being made of a second metal.... and at least one driving means operatively connected to said counterweight..."
>
> **Claim 6**:  "A vibratory assembly for imparting a vibratory force to a pile, comprising: a housing having first and second counterweight receiving means; a first counterweight ... having a cylindrical gear portion and an eccentric weight portion integral with said cylindrical gear portion, said eccentric weight portion having at least one insert-receiving area formed therein, said counterweight being made of a first metal; a second counterweight ... having a cylindrical gear portion and an eccentric weight portion integral with said cylindrical gear portion, said eccentric weight portion having at least one insert-receiving area formed therein, said counterweight being made of said first metal; a first solid insert member securely positioned in one of said at least one insert-receiving area of said first counterweight, said first solid insert member being made of a second metal....; a second solid insert member securely positioned in one of said at least one insert-receiving area of said second counterweight, said

---

[1]    Since the dependent claims necessarily depend upon the independent claims, and for ease of reference, only the independent claims at issue are expressly quoted herein.

United States District Court

For the Northern District of California

second solid insert member being made of a second metal...and at least one driving means operatively connected to said first and second counterweights..."

**Claim 11**: "A vibratory assembly for imparting a vibratory force to a pile, comprising: a housing having an even number of counterweight receiving means; an even number of counterweights ... each of said counterweights having a cylindrical gear portion and an eccentric weight portion integral with said cylindrical gear portion, said eccentric weight portion having at least one insert-receiving area formed therein, said counterweights being made of a first metal; a plurality of solid insert members, at least one of said solid insert members securely positioned in said at least one insert-receiving areas of said counterweights respectively, each of said solid insert members being made of a second metal.... and at least one driving means operatively connected to said counterweights..."

**Claim 16**: "A counterweight assembly for use in a vibratory pile driver and/or pile puller, comprising: a cylindrical gear portion having a plurality of gear teeth around its circumference, said cylindrical gear portion being made of a first metal; an eccentric weight portion connected to said cylindrical gear portion at a position radially outward of the axis of said cylindrical gear portion, said eccentric weight portion having at least one insert-receiving area therein, said eccentric weight portion being made of said first metal; and at least one solid insert member... securely positioned in said at least one insert-receiving area respectively, said at least one solid insert member being made of a second metal..."

See Declaration of Kenneth P. Kula ISO Bay Machinery's MSJ ("Kula Decl."), Ex. A ("'964 Patent"), at 9:33-53; 9:65-10:31; 10:43-66; 11:8-25.

B.    The Instant Motions

The court construed the relevant disputed claim terms on June 12, 2009. See generally  Order Construing Claims ("Claim Construction Order").  The parties have now filed cross-motions for summary judgment on the issues of infringement and invalidity. Specifically, plaintiff moves for summary judgment as to infringement of all asserted claims, while defendant moves for summary judgment as to non-infringement, as well as for a judgment that the invention covered by the asserted claims was obvious under the prior art, thereby rendering the claims invalid.

**DISCUSSION**

A.    Legal Standard

Summary judgment is appropriate when the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed.

United States District Court

For the Northern District of California

1  R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

3  B.    Analysis

4      The parties' cross-motions for summary judgment raise two overriding issues for the

5  court's resolution: (1) whether the undisputed facts demonstrate defendant's infringement

6  of the asserted claims by the Accused Devices; and (2) whether the undisputed facts

7  demonstrate the obviousness of the claimed invention in light of the prior art.  Both parties

8  seek opposing judgments as to the former issue, while defendant alone seeks summary

9  judgment as to the latter.

10     Preliminarily, the court notes that the parties do not dispute the design and/or

11  construction of the three Accused Devices at issue – i.e., the Early Model 500, the Model

12  500, and the Model 250.  Plaintiff – as does defendant – relies in particular on the "series of

13  declarations" filed by Zimmerman, HPSI's Vice President of Engineering, for a description

14  of the Accused Devices at issue.  See, e.g., Madson Declaration ISO Opp. Def. MSJ

15  ("Madson Opp. Decl."), Exs. A, B, L (setting forth Zimmerman's original declaration filed on

16  August 8, as well as subsequent declarations filed October 15, and October 28, 2009).  The

17  parties further do not dispute that, while the Early Model 500 was distinct, the Model 500

18  and Model 250 Devices are essentially identical in design, except for the fact that the Model

19  500 houses four eccentric weight assemblies, and the Model 250 houses two eccentric

20  weight assemblies.  The Early Model 500 device is depicted in Figure 2 to the original and

21  revised Zimmerman declarations, and the Model 250 and 500 devices are depicted in

22  Figure 3 to those same declarations.  See Madson Opp. Decl., Exs. A, L.

23     In sum, the Zimmerman declarations, and the '964 patent itself, disclose the

24  undisputed design elements of both the patented device, and the Accused Devices.

25     The court now turns to the merits of the parties' arguments.

26     1.    Infringement

27  Neither party disputes that the only relevant claims that need be considered are

28

4

United States District Court

For the Northern District of California

1  claims 1, 6, 11, and 16, since the remaining claims at issue depend from these four.

2  Accordingly, the issue before the court is whether summary judgment should be granted as

3  to infringement or non-infringement of claims 1, 6, 11, and 16.

4           a.    legal standards

5       The court engages in a two-step process in evaluating infringement.  First, the court

6  determines the scope and meaning of the claims via claim construction; then, the court

7  compares that construction of the patent against the accused products.  See, e.g.,

8  Business Objects, S.A. v. Microstrategy, Inc., 398 F.3d 1366, 1371 (Fed. Cir. 2004)

9  (citations omitted).  While claim construction is a matter of law, infringement itself is a

10  question of fact.  See, e.g., Frank's Casing Crew and Rental Tools, Inc. v. Weatherford

11  International, Inc., 389 F.3d 1370,1376 (Fed. Cir. 2004) (citations omitted).  Therefore, a

12  plaintiff is only entitled to summary judgment on the question of infringement "if the facts

13  and inferences, when viewed in the light most favorable to [defendant], would not persuade

14  a reasonable jury to return a verdict in favor of . . . the non-moving party."  Business

15  Objects, 398 F.3d at 1371.

16       Infringement may be proven by literal infringement.  A claim is "literally infringed" if

17  each properly construed claim element directly reads on the accused product or process.

18  See Jeneric/Pentron Inc. v. Dillon Co., 205 F.3d 1377, 1382 (Fed. Cir. 2000).  A claim may

19  also be infringed through the doctrine of equivalents.  Equivalence is a question of fact, and

20  it is determined as of the time the infringement takes place.  See generally Warner-

21  Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17 (1997); Graver Tank & Mfg. Co. v.

22  Linde Air Prod. Co., 339 U.S. 605 (1950).  The test for whether an element in the alleged

23  infringer's product or process is equivalent to a claimed element is whether the differences

24  between the two are insubstantial to one of ordinary skill in the art.  KJC Corp. v. Kinetic

25  Concepts, 223 F.3d 1351, 1359 (Fed. Cir. 2000).

26           b.    infringement of claims 1, 6, and 11

27       Claims 1, 6, and 11 are similar to each other, in that they require the same claimed

28

5

United States District Court

For the Northern District of California

1   "counterweight."  The claims merely vary in terms of the *number* of claimed counterweights

2   required.  Claim 1, for example, requires "a counterweight" (i.e., at least one

3   counterweight), whereas claim 6 requires "at least two counterweights" and claim 11

4   requires an "even number of counterweights."  See generally '964 Patent.  As these

5   distinctions are the only salient differences between the claims, the court considers all

6   claims – and substantive infringement arguments thereon – together.[2]

7        APE contends that defendants' Accused Devices infringe each independent claim

8   because the devices contain counterweights that are identical – both literally and via the

9   doctrine of equivalents – to the counterweight disclosed by the '964 patent.  Defendant

10  argues that no infringement is possible, however, because the Accused Devices lack the

11  following critical elements that are required by the claims: (1) the Accused Devices do not

12  contain, as part of the counterweight, "an eccentric weight portion integral with said

13  cylindrical gear portion;" and (2) the Accused Devices do not include an "eccentric weight

14  portion" that "[has] at least one insert-receiving area formed therein."

15       Turning to the first of these elements, the court's focus is on the following

16  requirement included in all three independent claims: that the claimed counterweight

17  "[have] a cylindrical gear portion and an eccentric weight portion integral with said

18  cylindrical gear portion...".  See, e.g., '964 Patent at 9:37-41.  The court construed the

19  "eccentric weight portion" of the counterweight to mean "the bottom portion of the

20  counterweight, which extends forward from the front face of the gear portion, containing

21  more weight than the top portion due to its larger mass, including at least one insert-

22  receiving area therein adapted to receive at least one solid tungsten rod."  See Claim

23  Construction Order at 8-10.  The court also construed "integral" to mean "formed or cast of

24  one-piece."  Id. at 10-13.  Finally, the court also construed "cylindrical gear portion" to

25

26       [2]    The remaining independent claim at issue, claim 16, also requires a
    "counterweight assembly;" however, the description of the counterweight assembly is
27  somewhat different from the claims otherwise described herein, and lacks certain key phrases.
    Thus, the parties have treated this claim differently from the rest in their arguments, and the
28  court does the same, as indicated below.

United States District Court
For the Northern District of California

1    mean: "the 'gear portion' of the counterweight is a substantially cylindrical portion and has a

2    rear face, a front face, and a plurality of gear teeth around its perimeter." Id. at 7-8.

3        Reading the court's construction together with the language of the claims, the

4    counterweight claimed by the '964 patent must include both a gear portion and an eccentric

5    weight portion that protrudes out of the gear portion, and the two must furthermore be

6    formed of one-piece.  This interpretation is consistent with the figures depicted in the '964

7    patent.  Figures 3A and 3B, for example, depict a gear portion that extends upward, and an

8    eccentric weight portion that is part of the gear portion, but protrudes outward from the

9    bottom half of the gear portion and has substantially more mass than the skinnier gear

10   portion sticking out on top.  See '964 Patent.  Critically, as depicted in Figure 3B, the two

11   portions appear to be cast of one piece, rather than being separate distinct elements.

12       Turning to the undisputed elements of the Accused Devices, it is immediately

13   apparent that, as defendant notes, the devices do not contain a gear portion and eccentric

14   weight portion that are "integral" – i.e., formed or cast in one-piece.  See Madson Decl.,

15   Exs B, L; see also id., Figures 2 and 3.  Rather, as the Zimmerman declarations

16   demonstrate (and as Figures 2 and 3 of the Zimmerman declarations clearly depict), the

17   gear portion and eccentric weight portion are "bolted together using two huck bolts." Id.  In

18   other words, the gear portion and the eccentric weight portion are distinct entities that are

19   connected together with bolts.  By contrast, the claims, as construed by the court and as

20   depicted in the Figures illustrated by the '964 patent, disclose a counterweight in which the

21   gear and eccentric weight portions are essentially melded together, forming a single piece

22   – not connected together.  Indeed, the court specifically considered the specification and

23   prosecution history in concluding that "integral," as used in the '964 patent, means that the

24   counterweight's gear and eccentric weight portions must basically be formed (or cast) of

25   one metal.  All of which compels the court to agree with defendant that the Accused

26   Devices – all three of them – cannot infringe claims 1, 6, or 11 on grounds that the Accused

27   Devices read upon the claims by virtue of satisfying the "integral" limitation of the claims.

28

7

1

2      Plaintiff seeks to avoid this conclusion by arguing, in essence, that the Accused

3   Devices contain an eccentric weight portion and a cylindrical gear portion that are *each*

4   made of "one piece," thereby satisfying the "integral" limitation.  Specifically, and looking

5   solely to the "gear" portion of each Accused Device – as set forth in Figures 2 and 3 of the

6   Zimmerman Declarations – plaintiff contends that the cylindrical gear portion *itself* contains

7   an "eccentric weight portion," since it contains a ridge that defines a "raised feature" that

8   extends forward from the gear itself, and since the bottom of the gear has fewer holes than

9   the top of the gear, thereby increasing the mass at the bottom of the gear and making it

10  eccentric.  See Pl. Opp. MSJ Br. at 10:3-11:6.  Since this cylindrical gear portion alone is

11  self-contained and made of a single piece, therefore, plaintiff argues that the cylindrical

12  gear portion contains an eccentric weight portion *and* a gear portion, both of which are

13  made of one piece.  This single cylindrical gear portion of the Accused Devices, concludes

14  plaintiff, reads upon the claims at issue.

15      On balance, however, this argument strains credulity, and unduly contorts the plain

16  meaning of the court's claim construction.  The argument's critical failing is that it reads out

17  of the court's construction the entire portion of the counterweight which, as depicted and

18  claimed in the '964 Patent itself and further depicted in Zimmerman's illustrations of the

19  Accused Devices, protrudes from the gear portion of the counterweight as a whole.  See

20  '964 Patent at Fig. 3A, 3B; Madson Decls., Exs. B, L at Figures 2-3.  As the court expressly

21  noted in its claim construction, each "counterweight" that is claimed by the '964 patent has

22  a top portion and a bottom portion, and a gear portion, and an eccentric weight portion –

23  with the bottom portion of the counterweight containing more weight than the top portion,

24  as the bottom portion contains the 'eccentric weight portion' of the entire counterweight.

25  See Claim Construction Order at 9:12-13; 10:1-5.  As contemplated by the court, the

26  eccentric weight portion and gear portion of the claimed counterweight are distinct

27  elements of a single counterweight, which elements are in turn cast of one piece.  Plaintiff,

28

8

United States District Court

For the Northern District of California

however, seeks to ignore this separate 'eccentric weight portion' of the counterweight entirely, by claiming that the cylindrical gear portion *itself* may be read to include both a gear portion and an eccentric weight portion.  In the court's view, this argument defies logic, and would furthermore render the '964 patent's "eccentric weight portion" limitation, as well as this court's own express understanding of the patent claims, superfluous.  Moreover, to the extent plaintiff's argument rests on the claim that the cylindrical gear portion of the Accused Devices contains a ridge that defines a "raised feature" that extends forward from the gear itself, the court notes that this "raised feature" extends throughout the entirety of the circumference of the cylindrical gear portion itself, rather than simply the bottom portion of the gear – which furthermore renders superfluous that portion of the court's claim construction order that specifically noted the claimed counterweight contemplates an eccentric portion that pertains to the bottom half of the counterweight only.  Furthermore, the "raised feature" invoked by plaintiff also pertains only to the female gears encompassed by the Accused Devices and would not apply to the male gears at all – further casting doubt on the applicability of plaintiff's argument.

Accordingly, the court rejects plaintiff's arguments on this point, and agrees instead with defendant, that the Accused Devices – which contain a separate "gear" portion and a separate "eccentric" portion that are depicted in the Zimmerman declarations – cannot infringe because they do not include an "eccentric weight portion" that is "integral" with the cylindrical gear portion of the counterweight.[3]

Although the court need not consider defendant's second argument – i.e., that the Accused Devices also fail to include an "eccentric weight portion" that "[has] at least one insert-receiving area" formed therein – in light of the foregoing holding, the court

_____

[3]     To the extent that plaintiff additionally argues that the Accused Devices contain a gear portion and eccentric weight portion that read upon the "integral" limitation under the doctrine of equivalents, see Pl. MSJ Br. at 9:17-10:5, the success of this argument, too, presupposes that the eccentric weight and cylindrical gear portions of the counterweight may be confined to the cylindrical gear portion of the counterweight alone.  Thus, this argument fails for the same reasons just detailed.

United States District Court

For the Northern District of California

1    nonetheless notes that this argument, too, is meritorious.

2        As noted previously, the court construed the "eccentric weight portion" of the

3    counterweight to mean "the bottom portion of the counterweight, which extends forward

4    from the front face of the gear portion, containing more weight than the top portion due to

5    its larger mass, including at least one insert-receiving area therein adapted to receive at

6    least one solid tungsten rod."  See Claim Construction Order at 8-10.   The court also

7    construed "insert-receiving area" to mean: "a bore formed in the eccentric weight portion of

8    the counterweight, which extends fully through the gear portion and fully through the

9    eccentric weight portion of the counterweight, capable of receiving a solid tungsten rod."

10        The Accused Devices, as the undisputed illustrations contained in the Zimmerman

11   Declarations show, do not literally read upon these limitations.  Critically, the Accused

12   Devices do not contain bores that extend fully through both the gear portion and eccentric

13   weight portion of the counterweight.  See Madson Decl., Exs. B and L at Figures 2 and 3.

14   Rather, there are "blind holes" that are depicted, which pertain to the eccentric weight

15   portion and to the gear portion of the counterweight separately and individually.  Id.  These

16   blind holes – which are equivalent to bores – are different in number in each portion of the

17   counterweight, as there are four blind holes in the eccentric portion of the counterweight

18   depicted in Figure 2, and only three blind holes depicted in the gear portion.  Id.  In Figure

19   3, there are three blind holes in the eccentric portion, and only one blind hole in the gear

20   portion.  Id.  Significantly, these depictions demonstrate that, because the eccentric weight

21   and cylindrical gear portions of the counterweight each contain different numbers of blind

22   holes, the blind holes do not accordingly extend completely from one portion of the

23   counterweight, all the way through the other portion.  The illustration of the eccentric weight

24   portion of the counterweight further proves this point, moreover, as the depiction of both the

25   front and back faces of the eccentric weight portion of the counterweight expressly show

26   that the holes therein do not extend all the way through the eccentric weight.  Id.

27        Furthermore, to the extent that plaintiff once again asserts that the eccentric weight

28

10

United States District Court

For the Northern District of California

1
2
3
4
5

portion of the counterweight is contained solely within the cylindrical gear portion of the Accused Devices and on that basis, supports a reading that the bore contained in the cylindrical gear portion extends fully through the gear portion and eccentric weight portion of the counterweight, the court once again rejects this presupposition as inconsistent with the claim language and the court's claim construction.

6
7
8

As such, the Accused Devices do not contain the claimed "insert-receiving area" in the eccentric weight portion of the counterweight, as required for literal infringement of the claims at issue.

9
10
11
12
13
14
15
16
17
18
19
20

Plaintiff also argues, alternatively, that the Accused Devices infringe the "insert receiving area" element of the claims at issue via the doctrine of equivalents.  Although not entirely clear, plaintiff appears to argue – without significant explanation – that the blind holes in the Accused Devices function in a substantially similar fashion to the bores that extend fully through the eccentric weight and gear portions of the claimed invention.  The court finds plaintiff's arguments on this front unpersuasive.  To the extent plaintiff's arguments are premised on the now-familiar argument that the cylindrical gear portion alone should be considered, the argument is rejected.  To the extent plaintiff argues that the doctrine of equivalents is satisfied when considering both the cylindrical gear and eccentric weight portions of the counterweight, as contemplated by the court in its claim construction order, plaintiff's arguments are so conclusory, and lack such detail, as to preclude judgment in its favor on this point.  See, e.g., Pl. Reply Br. ISO MSJ at 15:9-19.

21
22
23
24
25
26

In sum, defendant is also correct that the claimed "insert receiving area" of the '964 patent – which must *fully* extend *through* the gear and eccentric weight portions of the counterweight – is not contained in the Accused Devices, whether literally or functionally. Plaintiff's contrary argument – which largely depends on the same presupposition raised above claiming that the "eccentric weight portion" is contained *solely* in the gear portion of the counterweight – is without merit.

27
28

Ultimately, therefore, the court concludes that the undisputed evidence regarding the

United States District Court

For the Northern District of California

1  Accused Devices demonstrates that there is no materially disputed issue of fact as to

2  infringement, as the same facts illustrate that the Accused Devices lack two critical

3  limitations of the relevant claims:  (1) the requirement that the claimed invention contain, as

4  part of the counterweight, "an eccentric weight portion integral with said cylindrical gear

5  portion;" and (2) the requirement that the claimed invention include an "eccentric weight

6  portion" that "[has] at least one insert-receiving area formed therein."  Thus, defendant

7  cannot be held to infringe claims 1, 6, and 11 or any dependent claims therefrom, on these

8  bases.

9              c.    infringement of claim 16

10       Claim 16 covers "an eccentric weight portion *connected to* said cylindrical gear

11  portion" (emphasis added), and therefore differs from the foregoing claims in that it does

12  not require the claimed eccentric weight portion be "integral" with the cylindrical gear

13  portion of the counterweight.  The court has construed "connected to" to mean: "joined

14  together, united or linked."  See Claim Construction Order at 15-17.

15       As a preliminary matter, the same observations that lead to the conclusion that the

16  Accused Devices do *not* contain counterweights that are "integral" – i.e., the Accused

17  Devices contain eccentric weight portions and gear portions that are distinct, separate

18  entities that are bolted together rather than cast of one piece – support the conclusion that

19  the Accused Devices do, in fact, satisfy the "connected to" limitation of claim 16.  After all,

20  and as noted previously, the Accused Devices contain a cylindrical gear portion, and a

21  separate eccentric weight portion, both of which are bolted to each other "via huck bolts."

22  See, e.g., Madson Decl., Ex. B at 3-4.

23       For that reason, perhaps, defendant focuses its non-infringement argument on

24  estoppel arguments, rather than making strict infringement arguments.  Specifically,

25  defendant contends that APE is estopped from asserting that the Accused Devices *could*

26  read on claim 16, because plaintiff specifically disclaimed in its patent specification any

27  argument that a two-piece, bolted counterweight like defendant's could be covered by claim

28

United States District Court

For the Northern District of California

16.  Defendant notes that, in the specification of the '964 patent, the patentee expressly distinguishes and criticizes the prior art by noting that it included a "vibratory assembly with counterweights having a solid eccentric weight bolted to a portion of a cylindrical gear," which "bolted counterweights are not sufficiently durable, because the bolts have a very undesirable tendency to break under the large stress loads generated...".  See '964 Patent at 1:39-51.  The specification continues: "Another prior art vibratory assembly avoids this breaking problem by using a cast, one-piece, solid counterweight having an eccentric weight portion integral with a cylindrical gear portion" – which "integral" portion the patent went on to claim.  According to defendant, this specification language operates as a clear disavowal of devices that include bolted counterweights.

The court, however, remains unpersuaded.  While the language of the specification points to problems in the prior art, and furthermore criticizes the prior art before going on to include an "integral" portion in the invention that purportedly improves upon the prior art, the court agrees with plaintiff that this falls short of a clear disavowal of "bolted" counterweights in the specification.  Cf. SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1343-44 (Fed. Cir. 2001).  Indeed, the inclusion of claim 16 itself, which expressly differs from claims 1, 6, and 11 via its inclusion of the "connected to" limitation (as opposed to the "integral" limitation), cuts against such an interpretation; else, there would be no sense in even including claim 16.

Notwithstanding defendant's failure to persuade the court as to non-infringement via application of the estoppel doctrine against plaintiff's arguments, the court nonetheless concludes that a finding of non-infringement as to claim 16 (and its dependent claims) is appropriate.  Claim 16 requires, in addition to the "connected to" limitation, that the counterweight claimed therein contain an "eccentric weight portion having at least one insert-receiving area therein."  See '964 Patent at 11:15-17.  And in view of the court's foregoing discussion regarding the Accused Devices' failure to infringe the patent claims by virtue of the "insert-receiving area" limitation, the same reasoning that applied there,

United States District Court

For the Northern District of California

1  applies here.

2                                        * * *

3       In sum, as to non-infringement of independent claims 1, 6, 11, and 16 (and all

4  dependent claims at issue), the court hereby GRANTS summary judgment in defendant's

5  favor, and DENIES plaintiff's summary judgment motion as to infringement, for all the

6  foregoing reasons.

7       2.   Obviousness

8       Defendant also seeks a ruling that the '964 patent is invalid, on obviousness

9  grounds, as a result of (1) the ACE counterweight disclosed as prior art in the patent

10 specification; (2) Hornstein patent; and (3) the Toncelli patent.  Defendant more specifically

11 argues that the counterweight claimed by the '964 patent is obvious, in light of the

12 combination of the Ace counterweight and Hornstein, or alternatively, in light of the

13 combination of the Ace counterweight and Toncelli.

14       a.   legal standards

15      The legal standards for invalidity based on anticipation and/or obviousness are well-

16 established.  In general, a patent is entitled to a presumption of validity, and an accused

17 infringer must prove invalidity by clear and convincing evidence.  See Metabolite Labs., Inc.

18 v. Lab. Corp., 370 F.3d 1354, 1365 (Fed. Cir. 2004).  Indeed, the burden of proof in all

19 instances falls upon the party seeking to establish the invalidity of a patent claim, who

20 "must overcome the presumption of validity in 35 U.S.C. § 282 by clear and convincing

21 evidence."  Nystrom v. Trex Co., 374 F.3d 1105, 1117 (Fed. Cir.2004) (quoting State

22 Contracting & Eng'g Corp. v. Condotte Am., Inc., 346 F.3d 1057, 1067 (Fed. Cir.2003)).

23      A patent is considered obvious if "the differences between it and the prior art "are

24 such that the subject matter as a whole would have been obvious at the time the invention

25 was made to a person having ordinary skill in the art."  35 U.S.C. § 103(a).  To determine

26 obviousness, the court must "examine 1) the scope and the content of the prior art; 2) the

27 level of ordinary skill in the art; 3) the differences between the claimed invention and the

28

14

United States District Court

For the Northern District of California

1   prior art; and 4) the objective evidence of nonobviousness."  Iron Grip Barbell Co., Inc. v.

2   USA Sports, Inc., 392 F.3d 1317, 1320 (Fed. Cir. 2004), citing Graham v. John Deere Co.,

3   383 U.S. 1, 17-18 (1966).  Obviousness is a question of law based on underlying questions

4   of fact.  Medical Instrumentation, 344 F.3d at 1220 (Fed. Cir. 2003) (citation omitted).

5           To prevail on a claim for obviousness, a defendant was ordinarily required to show

6   "a motivation or suggestion" to combine the separate elements of prior art cited, along with

7   "a reasonable expectation of success" in doing so.  Boehringer Ingelheim Vetmedica, Inc.

8   v. Schering-Plough Corp., 320 F.3d 1339, 1354 (Fed. Cir. 2003).  See also Teleflex, Inc. v.

9   Ficosa North Am. Corp., 299 F.3d 1313, 1334 (Fed. Cir. 2002) ("The showing of motivation

10  to combine must be clear and particular, and it must be supported by actual evidence.").  In

11  KSR Int'l Co. v. Teleflex, Inc., 127 S. Ct. 1727 (2007), the Supreme Court considered this

12  standard anew, however, and cautioned that the requirement for such a showing cannot be

13  transformed into a rigid rule that limits the obviousness inquiry.  See id. at 1741 ("The

14  obviousness analysis cannot be confined by a formalistic conception of the words teaching,

15  suggestion, and motivation, or by overemphasis on the importance of published articles

16  and the explicit content of issued patents.").  As the Court said: "In determining whether the

17  subject matter of a patent claim is obvious, neither the particular motivation nor the avowed

18  purpose of the patentee controls. What matters is the objective reach of the claim." Id. at

19  1741-42.  With this in mind, the "predictable use of prior art elements according to their

20  established functions" is not patentable.  Id. at 1740.

21          In further describing the manner of the obviousness analysis to be undertaken, the

22  KSR Court also made several observations that are pertinent here.  It noted, for example,

23  that a patent composed of several elements is not proved obvious "merely by

24  demonstrating that each of its elements was, independently, known in the prior art."  See

25  id. at 1741.  Rather, the question is really whether "a person of ordinary skill can implement

26  a predictable variation."  If so, then § 103 likely bars its patentability.  For the same reason,

27  "if a technique has been used to improve one device, and a person of ordinary skill in the

28

15

United States District Court

For the Northern District of California

art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill." Id. at 1740. Finally, the Court noted that it will often be necessary "for a court to look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue." Id. at 1740-41.

b.      the prior art

Turning to the prior art, there are three references at issue before the court.  The first is what the parties refer to as the Ace counterweight.  This counterweight refers to the patentee/inventor's own prior attempts to develop a new type of vibratory hammer/extractor.  The efforts to develop a satisfactory counterweight prior to the '964 patent are described in Col. 1, lines 52-Col. 2, line 9 of the '964 patent.  Second, U.S. Patent No. 3,224,514 (the "Hornstein patent") was issued in 1965, and describes a counterweight assembly that includes cavities for receiving solid weights made of "lead, or other heavy metal, such as tungsten or uranium alloys, or other heavy material...". See Declaration of Kenneth Kula ISO Def. Motion for Summary Judgment ("Kula Decl."), Ex. M. Finally, U.S. Patent No. 2,042,499 (the "Toncelli patent") was issued in 1991, and describes a rotor having cavities adopted to receive solid pads or plugs made of "a material selected among lead, wolfram [tungsten] and their alloys." See Kula Decl., Exs. O, P.

According to defendant, it is undisputed that the Ace counterweight constitutes prior art, and had the following characteristics: it was made with a hollow "eccentric portion and, to this hollow eccentric portion, one or more bores were made and filled with molten lead and allowed to cool;" the counterweight was included in a vibratory assembly for imparting a vibratory force to a pile; it was included in housing having at least one counterweight receiving means; it had a cylindrical gear portion; it had an eccentric weight portion; the eccentric weight portion was integral with the cylindrical gear portion; and the assembly

**United States District Court**
For the Northern District of California

1  included at least one driving means adapted to rotate the Ace counterweight about its

2  rotational axis.  <u>See, e.g.</u>, uncontroverted facts at Def. MSJ Br. at 19:3-20:7.  Thus,

3  contends defendant, the only difference between the claimed counterweight and the Ace

4  counterweight is that the Ace counterweight housed lead inserts, not tungsten inserts, and

5  that this counterweight, combined with the Tungsten use/inserts disclosed in Hornstein and

6  Toncelli, render the claimed counterweight of the '964 patent obvious.  Defendant relies

7  heavily on its depiction of the Ace counterweight (in Figures 5 and 6 of their motion

8  papers), and its comparison with the '964 counterweight, in making this argument.

9        Plaintiff, for its part, does not dispute per se either the content or disclosures

10  contained in the Hornstein or Toncelli patents.  Rather, plaintiff focuses on the Ace

11  counterweight, arguing that there are genuine issues of material fact regarding the actual

12  configuration of the Ace counterweight.  To that end, plaintiff introduces the supporting

13  declaration of John White, the inventor and creator of the purported Ace counterweight.

14  <u>See generally</u> Declaration of John L. White ISO Opp. Def. MSJ ("White Decl.").  According

15  to plaintiff, the depiction of the Ace counterweight as being nearly "identical" to the '964

16  counterweight is wrong: the drawing used by defense counsel is counsel's own re-creation;

17  the actual drawing relied on by defendant as a basis for counsel's drawing – as exhibited in

18  document no. APE00865 – does not actually depict the true Ace counterweight that was

19  developed, is not prior art at any rate, and so cannot be equated to the Ace counterweight;

20  and the actual counterweight that *was* used by Ace (which plaintiff refers to as the Device

21  with a Lead-Filled Hollow) did not actually utilize any lead inserts whatsoever, as it relied on

22  a pouring of molten lead that is distinctly different from lead inserts.  Based on all these

23  differences, plaintiff contends that any analysis concluding that one of skill in the art would

24  have been motivated to combine the Ace counterweight with Hornstein or Toncelli, is

25  improper hindsight.

26        On balance, the court concludes that a material dispute of fact exists regarding the

27  scope of what the Ace counterweight depicted and covered, which dispute of fact is

28

United States District Court

For the Northern District of California

1    material to the question of obviousness, and therefore validity of the patent.

2         Defendant, for example, has submitted its statement of supposedly uncontroverted

3    facts regarding the counterweight.  See Def. Br. ISO MSJ at ¶. 19-20.  At first blush, this list

4    of purportedly undisputed facts would seem to go a long way toward meeting the various

5    elements of the claimed patent here, with the exception of the Tungsten inserts –  e.g., the

6    use of an eccentric weight portion and cylindrical gear portion of the counterweight; the

7    integral nature of the eccentric weight and cylindrical gear portions of the counterweight;

8    the counterweight's use in a vibratory assembly, and the assembly's use of housing having

9    at least one counterweight receiving means; and the inclusion in the assembly of at least

10   one driving means to rotate the counterweight about its rotational axis.  Id.  Moreover,

11   plaintiff actually appears to agree with many of defendant's undisputed facts, specifically

12   disputing only whether the *drawing* of the Ace counterweight produced by defendant

13   actually depicts the Ace counterweight.  See Madson Decl., Ex. B.

14        However, on closer inspection of the White Declaration submitted by plaintiff, a

15   material dispute emerges.  White testifies that the device he conceived and implemented –

16   i.e., the Device with a Lead-Filled Hollow – bore no resemblance to the drawing that

17   defendant relies on as proof of the Ace counterweight.  See White Decl., ¶¶ 5-9.  White

18   also avers that the drawing – and any elements it discloses – is *not* prior art, since it was

19   never published or publicly disclosed prior to his declaration in this matter.  Furthermore,

20   since the counterweight that Ace developed – the Device with a Lead-Filled Hollow – was

21   not representative of the drawing that defendant relies on, the actual counterweight that

22   Ace developed never contained an eccentric weight, as depicted in the drawing.  Id. at ¶ 7.

23   Rather, all efforts to recreate the drawing, or to make an Ace counterweight that was

24   similar to the drawing, ended in disaster, since molten lead could not be used to fill the

25   bores in the counterweight without horrible results.  See generally id.  Plaintiff furthermore

26   notes that in the White deposition, to which defendant only selectively cites in its opening

27   brief, White also testified that the actual Ace counterweight that was depicted in the

28

United States District Court

For the Northern District of California

1  drawing relied on by defendant exhibits a "big difference" from the actual '964 patent

2  design.  See Madson Decl., Ex. K at 217-19.

3         On balance, therefore, White's testimony casts doubt on (1) whether the drawing of

4  the purported Ace counterweight upon which defendant relies for its argument is prior art,

5  and can be used as proof of what the Ace counterweight disclosed; (2) whether the Ace

6  counterweight actually disclosed "lead inserts" (as opposed to molten lead techniques); and

7  (3) what, in fact, the true Ace counterweight that was *actually* developed disclosed.  All of

8  which is material to the question of how the prior art surrounding the Ace counterweight

9  should be defined.  Only once this is defined, can the court go on to consider it in light of

10  Hornstein and Toncelli.

11         Defendant responded at the hearing on this matter that the issue of the actual

12  difference between the Ace counterweight and the drawing as a basis for invalidity is

13  immaterial.  The court, however, is not persuaded that this is so.  It appears to the court

14  that the very nature of the parties' dispute regarding the prior art and what it discloses, is

15  not clear, let alone is it undisputed.  This dispute – which in turn goes to the very question

16  of obviousness – is therefore material.

17         Accordingly, defendant's request for summary judgment as to invalidity should be

18  DENIED.

19  C.    Conclusion

20         For all the foregoing reasons, the court GRANTS defendant's motion for summary

21  judgment as to non-infringement of claims 1, 6, 11 and 16, and all dependent claims

22  therefrom; DENIES plaintiff's cross-motion for summary judgment as to infringement of the

23  same claims; and DENIES defendant's motion for summary judgment as to invalidity on

24  obviousness grounds.

25         By separate order, the parties are referred for assignment to a magistrate judge for a

26  mandatory settlement conference.  Thereafter, and before commencement of pretrial

27  preparation, the parties shall attend a case management conference to discuss whether trial

28

19

of this matter should go forward or should be stayed pending resolution of related litigation.

**IT IS SO ORDERED.**

Dated: February 25, 2010

_____
PHYLLIS J. HAMILTON
United States District Judge

**United States District Court**
For the Northern District of California

20